WALTER A. ZEROFSKI'S CASE.

Suffolk.  May 12, 1981. — June 24, 1981.

Present: HALE, C.J., GRANT, & SMITH, JJ.

*Workmen's Compensation Act*, Injuries to which act applies, Subsequent injury, What insurer liable.

Evidence that an employee had suffered an injury in the course of his employment in 1964 and that the injury was thereafter aggravated by his standing and working on concrete floors from 1966 to 1976 warranted findings that the employee's condition resulted from "bodily wear and tear" rather than a specific aggravation of a preexisting condition and that he had not, therefore, sustained a personal injury within the meaning of G. L. c. 152 during the period 1966 to 1976. [154-159]

The provisions of G. L. c. 152, § 35B, inserted by St. 1970, c. 667, § 1, were not applicable to an employee who sustained an injury in the course of his employment in 1964 which was thereafter aggravated by his standing and working on concrete floors from 1966 to 1976. [159]

CERTIFICATION to the Superior Court Department of a decision by the Industrial Accident Board.

The case was heard by *Lynch*, J.

*Deirdre H. Harris* (*Cynthia J. Cohen* with her) for the insurer.

*John P. Morgan* for the employer.

*Wayne A. Perkins* for the employee.

HALE, C.J.  This case involves a claim for workmen's compensation. The principal issue is whether the Commercial Union Assurance Company (which was the insurer for the employer James J. Gallery, Inc., up to November 1, 1966, on which date the employer became a self-insurer) or the employer-self-insurer was on the risk. The determination of that question turns on whether the employee sustained an in-

jury compensable under G. L. c. 152 during the period after the employer became a self-insurer. The single member found that the employee suffered a compensable aggravation of a condition resulting from an earlier injury, liability for which had been assumed by the insurer. The single member then ordered that the self-insurer, which was on the risk at the time of the aggravation, pay, among other things, total and temporary compensation under c. 152, § 34, from March 1, 1977, to January 22, 1979, and continuing. The reviewing board (board) affirmed and adopted the findings and decision of the single member and made updated orders for the payment of compensation by the self-insurer. The self-insurer appealed to the Superior Court, and that court ruled that the employee had not sustained a personal injury within the meaning of G. L. c. 152, during the period that the self-insurer was on the risk. Judgment was entered reversing the order of the board and ordering that total and temporary compensation and other payments be made by the insurer. The employee, the insurer, and the self-insurer have appealed to this court.[1] We agree with the reasoning and conclusion of the judge and affirm the judgment.

Rather than attempt to paraphrase the concise findings of the single member, which all parties agree are supported in the record, we set them out verbatim except for one paragraph dealing with the timeliness of the notice and whether the employee had filed a proper claim.

"I find that the employee is sixty-five years of age; that he is a high school graduate; that most of his adult working life was spent in meat processing; that he worked for General Foods as warehouse manager; that he began work for J. J. Gallery, Inc. in 1950; that at the time he was injured in 1964 he was a working foreman; that he facilitated the movement of frozen foods from warehouse to trucks; that on August 26, 1964 a pallet fell on his right foot and fractured a toe; that he

---

[1] The self-insurer has appealed "to protect its rights to argue the issues of disability, notice, etc., while urging affirmation of the Superior Court's major findings."

worked on concrete floors and was on his feet eighty percent of the time; that he was later hospitalized; that he later developed venous problems and underwent a venal ligation; that he also developed ulcerations and swelling of his right leg; that when he returned to work in 1966 he worked at a desk for about six weeks before going back to his regular job; that he worked from September 7, 1966 until February 16, 1976 when he was laid off; that after resuming work, his leg would break down and ulcerate three or four times per year; that on May 5, 1971 he suffered an injury at work to his right ankle[2] and he was out of work for a while; that for about one year after he was laid off, he collected unemployment compensation; that he has severe disfigurement of his right leg; that had he not been laid off he would have continued working; that as of February 17, 1976 he was disabled from doing any work which required prolonged standing or walking; that the condition he developed after his 1964 injury was aggravated by his standing and walking on concrete floors at work from 1966 to 1976.

". . . .

"I further find and rule that because of the employee's age, work experience and education, the injury and subsequent aggravation he suffered has totally disabled him from doing work on the open labor market."

1. The parties are in agreement that the board was warranted in finding that the employee's preexisting condition was aggravated by standing and walking on concrete floors from 1966-1976. The question here is whether on the facts found by the single member and adopted by the board, the aggravation of the employee's condition was the result "of a series of specific stressful episodes" or whether it was "the result of everyday stress or '[b]odily wear and tear resulting from a long period of hard work.'" See *Albanese's Case*, 378 Mass. 14, 18 (1979).

In support of their argument that there was a personal injury within the meaning of the act, the insurer and the em-

---

[2] This injury is of no significance in the present case.

ployee rely on cases such as *Mills's Case*, 258 Mass. 475 (1927) (a series of strains from heavy lifting and pushing over a period of several months which caused or aggravated a hernia condition); *Harrington's Case*, 285 Mass. 69, 72 (1933) (facts comparable to those in *Mills*); *Brzozowoski's Case*, 328 Mass. 113 (1951) (work and the abnormal temperature precipitated heart attack); *Pell* v. *New Bedford Gas & Edison Light Co.*, 325 Mass. 239 (1950) (a tort case in which it was held that an eye injury due to a long period of work under improper lighting conditions was an injury "of a compensable class" and that a motion for judgment on the pleadings was properly allowed); *Trombetta's Case*, 1 Mass. App. Ct. 102 (1973) (intervertebral disc condition aggravated during four months' work lifting bricks and cement blocks, even though cause of the condition could not be pinpointed to any one event); *Pena's Case*, 5 Mass. App. Ct. 451 (1977) (facts comparable to those in *Trombetta's Case*).[3]

The judge, properly recognizing the question as close, ruled that the case was governed by such authorities as *Spalla's Case*, 320 Mass. 416, 418 (1946) ("[b]odily wear and tear resulting from a long period of hard work is not a compensable injury, even if it diminishes capacity to earn"); *Burns's Case*, 266 Mass. 516, 518 (1929) (heart weakened by disease; no sudden injury or peculiar strain); *Reardon's Case*, 275 Mass. 24, 27 (1931) (a contracture of the hand marked by "the gradual breaking down of tissue as the result of many years of continuous labor"); *Belezarian's Case*, 307 Mass. 557 (1940) (gradual wearing out of tissue due to heavy shoe factory work as a laster); *Costa's Case*, 333 Mass. 286, 289 (1955) (no evidence that the employee sustained a specific injury subsequent to initial injury and first of three successive insurers held to be on the risk).

---

[3] Cases which have been cited by the employee and insurer which involve the presence of noxious conditions (a class which could well include the *Pell* case, *supra*) are inapposite, because as the judge noted, such conditions are not present here. See e.g. *Duggan's Case*, 315 Mass. 355 (1944); *Kulig's Case*, 331 Mass. 524 (1954); *Casey's Case*, 6 Mass. App. Ct. 859 (1978).

While the board found that the condition in the employee's leg which occurred as the result of his 1964 injury was aggravated by "his standing and working on concrete floors at work from 1966-1976", there was no finding that the aggravation was attributable to any specific instance of strain or identifiable series of strains. In this regard the facts of this case are remarkably similar to those in *Burns's Case, supra,* in which the employee was a watchman whose preexisting heart problem the board found "was the remote cause of his incapacity and injury [and that] the strain and exertion of his job was the proximate, contributing cause" *(id.* at 517). In that case the employee "traversed nightly, seven nights a week, in going through halls and up and down stairs, from thirteen to fifteen miles" *(id.).* As to that the court said, "[t]here was, however, no particular instance of strain in the course of his work, and his ultimate breakdown appears to us to be merely the natural effect of exertion in this work upon a heart already weakened by valvular disease. In such circumstances we think that the workmen's compensation act does not apply; and that as matter of law the suffering which the employee has undergone cannot be said to be the result of a personal injury arising out of the employment entitling him to compensation under the act. See *Sullivan's Case,* 265 Mass. 497 [1929]." The court also noted that the case was controlled by the principles laid down in *Maggelet's Case,* 228 Mass. 57 (1917).

While the concept of wear and tear has been narrowed since it was enunciated in *Maggelet's Case,* it has not been overruled,[4] and its continuing vitality was recently recognized in *Albanese's Case,* 378 Mass. at 18. We hold that the judge was correct in following the concept and in concluding that the employee's condition resulted from "bodily

---

[4] See Locke, Workmen's Compensation § 175 (1981), which contains an excellent discussion of the "wear and tear" principle and suggests that it should be overruled. Until such time as that might occur by either legislative or judicial action (as to which see *Begin's Case,* 354 Mass. 594, 597 [1968]), we are bound by the principle. See *Burke* v. *Toothaker,* 1 Mass. App. Ct. 234, 239 (1973).

wear and tear" rather than the specific aggravation of a pre-existing condition for which the self-insurer would have to provide compensation.

2. The employee argues that the judge erred in failing to apply G. L. c. 152, § 35B, inserted by St. 1970, c. 667, § 1, effective February 1, 1971.[5] While the employee claims (and the insurer concedes) that he requested the judge to apply the provisions of § 35B and that the judge's failure to do so was the reason for his appeal, there is nothing in the record before us which supports that claim. Despite the procedural flaw, we have considered the question. We have held in part 1 that the only personal injury within the meaning of the Workmen's Compensation Act occurred in 1964. Thus, § 35B, which was not effective until February 1, 1971, would have to be applied retroactively if the employee's contention were to be upheld. As the application of § 35B would result in an increase in the amount of compensation payable to the employee, that section, under G. L. c. 152, § 2A, inserted by St. 1946, c. 386, § 3, would "be deemed to be substantive in character" and would apply only to personal injuries occurring on or after the effective date of § 35B, "unless otherwise expressly provided." Neither § 35 nor anything in St. 1970, c. 667, so provides, and thus the judge did not err in refusing the employee's request to apply § 35B. See Locke, Workmen's Compensation §§ 28 (last par.) and 302 (1981).

In view of the foregoing conclusions, we need not consider the other questions which have been argued.

*Judgment affirmed.*

[5] Section 35B reads in pertinent part: "An employee who has been receiving compensation under this chapter and who has returned to work for a period of not less than two months shall, if he is subsequently injured and receives compensation, be paid such compensation at the rate in effect at the time of the subsequent injury whether or not such subsequent injury is determined to be a recurrence of the former injury; provided, that if compensation for the old injury was paid in a lump sum, he shall not receive compensation unless the subsequent claim is determined to be a new injury."