## JUDITH MORRILL vs. DONALD W. TONG.

Bristol. May 6, 1983. — September 13, 1983.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Jurisdiction,* Nonresident, Quasi in rem, Long-arm statute. *Probate Court,* Appearance, Jurisdiction. *Waiver.*

A defendant in an action for garnishment of his military pension for arrearages on his child support payments who, by motion to dismiss and by his answer to the complaint, asserted the defense of lack of personal jurisdiction, did not waive his defense of lack of quasi-in-rem jurisdiction, reference to which was omitted from his written pleadings but included in a memorandum of law supplied to the trial judge, where the court was, in the circumstances, sufficiently informed of all the bases of the defendant's challenge to its jurisdiction. [124-125]

A defendant in an action seeking an order of the Probate Court for garnishment of his military pension for arrearages on his child support payments, who moved to dismiss the action for lack of jurisdiction and, after the denial of his motion, submitted an answer to the merits of the plaintiff's complaint in which he alleged that the plaintiff had alienated his children from him, and that the "Plaintiff . . . comes into this Court with unclean hands," and in which he included a general prayer for relief, did not thereby waive his defense that the Probate Court lacked jurisdiction over him. [125-127]

In an action by a wife for garnishment of her former husband's military pension for arrearages on child support payments ordered by a Rhode Island court, the Probate Court judge erred in basing an exercise of quasi-in-rem jurisdiction on the interest of the husband, a resident of Spain, in his military pension, through which he had channeled child support payments, and in his Navy identification card, by which he had provided various benefits for the children. [127-129]

The contacts with Massachusetts of the defendant, a resident of Spain, in an action by his former wife for garnishment of his military pension for arrearages on his child support payments, consisting of the husband's monthly support payments sent to Massachusetts under a Rhode Island court decree, the maintenance of the husband's Navy identification card for the children's benefit, the husband's personal letters, gifts, and cards to the children and telephone conversations with them, a letter from the defendant to the wife's attorney indicating an

intention to defend his parental rights, and the fact that Massachusetts was the first marital home of the parties, were insufficient to confer on a Massachusetts court personal jurisdiction over the defendant under § 3 (a) of G. L. c. 223A. [129-134]

COMPLAINT for modification of a foreign divorce decree filed in the Bristol Division of the Probate and Family Court Department on January 31, 1980.

The case was heard by *Rotenberg, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own motion.

*Barbara A. Lenk* for the defendant.

*Bruce Bendiksen (M. David Scheinman* with him) for the plaintiff.

LYNCH, J. The defendant, Donald W. Tong, appealed to the Appeals Court from a judgment and order of the Probate and Family Court for garnishment of his Navy pension for child support. We transferred the case to this court on our own motion.[1] The appeal presents the questions whether the Probate Court erred in asserting personal jurisdiction over the defendant, a resident of Spain, and whether the court's exercise of quasi-in-rem jurisdiction to reach the defendant's military pension was impermissible. We reverse the judgment of the Probate Court.

The facts are not disputed by the parties. The defendant and the plaintiff, Judith Morrill, formerly Judith Tong, were married in Newport, Rhode Island, on January 20, 1962. The defendant was at that time in the United States Navy; he had formerly been domiciled in New York State. The plaintiff's former domicil was Massachusetts. From the time of their marriage until May, 1962, the couple resided in and was domiciled in Massachusetts. In May, 1962, they moved to Ohio for a brief interval, and then to the defendant's mother's home in New York. The couple's first child was born in Camden, New York, on August 25, 1962. At some time in 1962 the defendant reenlisted in the Navy,

---

[1] Shortly before oral argument of this appeal, the defendant's counsel, having received a letter of discharge from the defendant, moved to withdraw as counsel. At our instruction, counsel argued as a friend of the court.

and, in November of that year, the couple obtained naval housing in Newport, Rhode Island, where their second child was born on June 27, 1964.

Between July, 1965, and June, 1970, the couple lived in California, where the defendant was stationed during that time. In June, 1970, they returned to Massachusetts for approximately one month. In July, 1970, they purchased a home in Bristol, Rhode Island, in which they lived until the time of their separation in January, 1972. In that year the plaintiff filed an action for divorce in the Rhode Island Family Court. The defendant generally appeared through counsel in the divorce proceeding. A final decree of divorce was entered by the Rhode Island court on May 30, 1973.

By the terms of the decree, the plaintiff was awarded custody of the two children of the marriage, and the defendant was granted reasonable visitation rights. The plaintiff waived alimony, and the defendant was ordered to pay to the plaintiff the sum of $220 a month for the support of the minor children, and to maintain his Navy identification card for the benefit of the children. Subsequent to the entry of the interlocutory decree, the defendant authorized the director of the Navy Family Allowance Activity, located in Cleveland, Ohio, to send the sum of $220 a month to the plaintiff at her current address. The plaintiff was to notify the director of any change in her address.

In November, 1976, the plaintiff and the children moved from Rhode Island to Dartmouth, Massachusetts. The plaintiff continued to receive monthly support payments from the Navy Family Allowance Activity at her Massachusetts address until June, 1979, when the defendant instructed the director to discontinue the payments. On January 30, 1980, the plaintiff petitioned the Probate Court for care, custody, education, and maintenance pursuant to G. L. c. 208, § 29,[2]

---

[2] General Laws c. 208, § 29, as amended by St. 1975, c. 400, § 30, provides: "If, after a divorce has been adjudged in another jurisdiction, minor children of the marriage are inhabitants of, or residents in this commonwealth, the superior court or probate court for the county in which said minors or any of them are inhabitants or residents, upon an

and sought an order to the Department of the Navy to divert from the defendant's pension an amount equal to the arrearages on support payments from June, 1979, and $220 a month thereafter until the children reached majority,[3] and such other relief as the court deemed just and proper.

The defendant specially appeared and moved to dismiss the action pursuant to Mass. R. Dom. Rel. P. 12 (b) (2) (1975) and the New Uniform Practices of Probate Courts of Massachusetts, VII, alleging that the court lacked personal jurisdiction over him.[4] The motion was denied and the defendant thereafter filed an answer to each of the paragraphs of the complaint, reciting as affirmative defenses: "1. This Court lacks personal jurisdiction over Defendant . . . who resides in Palma De Majorca, Spain. 2. Plaintiff . . . has intentionally and continuously alienated the children from their father and has intentionally and continuously deprived him of the affection and companionship of his children. Plaintiff . . . comes into this Court with unclean hands." The defendant prayed that the complaint be dismissed and that the court "[o]rder such other relief as [it] shall deem just and proper." The case proceeded to trial, at which

action of either parent or of a next friend in behalf of the children, after notice to both parents, shall have the same power to make judgments relative to their care, custody, education and maintenance, and to revise and alter such judgments or make new judgments, as if the divorce had been adjudged in this commonwealth."

[3] At the time the plaintiff brought this action, the children were seventeen and fifteen. When the appeal was docketed in the Appeals Court, the children were nineteen and seventeen. The elder child reached the age of twenty-one and the younger child nineteen while the appeal was pending in this court. No question with respect to the majority of the children has been raised.

[4] The motion averred: "Defendant does not now and has never resided within the Commonwealth. The parties were married and divorced in Rhode Island and the children born to this marriage were not born in Massachusetts. This court lacks the minimum contacts constitutionally required to give it jurisdiction over Defendant." Although the defendant alluded, in argument to the Probate Court and on appeal, to the New Uniform Practices of Probate Courts of Massachusetts, VII, the applicability of that provision to the case at bar was not argued, and is not considered by us.

time the defendant renewed his motion to dismiss. The trial judge, who had not passed upon the pretrial motion, heard the argument of both parties and took the motion under advisement. At the same time, the judge requested the parties to file an agreed statement of facts pending his decision on the motion. The defendant also filed a motion to report the case in accordance with Mass. R. Dom. Rel. P. 64 (1975). On February 16, 1982, the judge denied the defendant's motions and ordered that his military pension be garnished to pay to the plaintiff an arrearage of $7,040 and to continue monthly support payments of $220.

The defendant submits that the Probate Court judge erred in concluding (1) that the defendant waived his defense of lack of personal jurisdiction, (2) that the defendant's military pension was subject to the court's exercise of quasi-in-rem jurisdiction, and (3) that the defendant had sufficient contacts with the Commonwealth to support the assertion of personal jurisdiction over him. The plaintiff argues that the judge's conclusions were proper in this case, and further claims that, under Mass. R. Dom. Rel. P. 12 (g) and 12 (h) (1) (1975), the defendant has waived the defense of lack of quasi-in-rem jurisdiction by not specifically pleading that defense in his pretrial motion or answer to the complaint.

1. *Waiver of the defense of lack of jurisdiction.* We turn first to the plaintiff's claim that the defense of lack of quasi-in-rem jurisdiction has been waived. The defendant's motion to dismiss, renewed before a second judge, and his answer to the complaint asserted the defense of lack of personal jurisdiction. A timely motion to dismiss an action pursuant to Mass. R. Civ. P. 12 (b) (2), 365 Mass. 754 (1974), can embrace the defense of lack of jurisdiction over the interest of the defendant in property which may be located here. See J.W. Smith & H.B. Zobel, Rules Practice §§ 12.4 n.27, 12.9 (1974); 5 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1351 (1969) (commenting on Fed. R. Civ. P. 12 [b] [2]); *Fish* v. *Bamby Bakers, Inc.,* 76 F.R.D. 511, 513 (N.D.N.Y. 1977). Here the motion to dismiss and answer did not set forth any particular assertions

respecting that portion of the complaint which sought to have the defendant's military pension garnished, but maintained that the defendant's contacts with Massachusetts were insufficient to support the assertion of jurisdiction over him. During oral argument before the trial judge, however, defense counsel supplied the court with a memorandum of applicable law and argued that the court lacked in personam and quasi-in-rem jurisdiction to order the pension garnished.[5] In these circumstances, the omission of specific reference to quasi-in-rem jurisdiction in the written pleadings did not operate as a waiver of that defense. The court was sufficiently informed of the bases of the defendant's challenges to its jurisdiction when the motion to dismiss was taken under advisement.

The judge viewed the defendant's submission of an answer to the merits of the complaint, filed after the denial of his original motion to dismiss the action for lack of jurisdiction, as a waiver of that defense. Under our current rules of practice, "[n]o defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion." Mass. R. Civ. P. 12 (b), 365 Mass. 754 (1974). See *Ross* v. *Ross*, 371 Mass. 439, 443 n.2 (1976). Further, a defendant who has unsuccessfully challenged the court's jurisdiction over him may proceed to the merits without waiving his right to appellate review of the question of jurisdiction. See J.W. Smith & H.B. Zobel, *supra* § 12.9; *Walling* v. *Beers*, 120 Mass. 548, 550 (1876). See also *Cheshire Nat'l Bank* v. *Jaynes*, 224 Mass. 14, 19-20 (1916); 93 A.L.R. § 1302 (1934). In the instant case, the

---

[5] The record does not show whether the memorandum was submitted to the motion judge. However, the renewed motion was identical to the original motion to dismiss. On the question of quasi-in-rem jurisdiction, defense counsel cited *Shaffer* v. *Heitner*, 433 U.S. 186 (1977), and *Rush* v. *Savchuk*, 444 U.S. 320 (1980), as casting doubt on the validity of quasi-in-rem jurisdiction as an independent basis for the assertion of jurisdiction, and as requiring the minimum contacts analysis enunciated in *International Shoe Co.* v. *Washington*, 326 U.S. 310 (1945). Further, defense counsel argued that the military pension was neither located in nor related to Massachusetts.

judge based his finding of waiver on the defendant's second "affirmative defense," coupled with the prayer for such other relief as the court might deem just and proper. The judge concluded that the defendant had, in effect, "waived any plea to the jurisdiction and [had] appeared generally and thereby submitted to the power and jurisdiction of this Court."[6] We do not agree.

The judge relied, as does the plaintiff on appeal, upon decisions rendered by this court prior to our adoption of the rules of civil procedure. 365 Mass. 730 (1974).[7] In the instant case, the defendant's "affirmative defense," while alleging alienation of the children and deprivation of their companionship, concluded with the words: "Plaintiff . . . comes into this Court with unclean hands." This language cannot be viewed as a voluntary submission to the judgment of the court of one of the principal issues in the suit. Contrast *Buckley* v. *John*, 314 Mass. 719 (1943). We read the "affirmative defense" as a whole as resisting the invocation of the court's power by this plaintiff. See *Fisher* v. *Fisher*, 349 Mass. 675, 677 (1965). See also *MacCormac* v. *Flynn*, 313 Mass. 547, 549 (1943).[8]

---

[6] The plaintiff also urges waiver on the basis of the defendant's failure to preface his answer to the complaint and counsel's certificate of service with language specifically preserving the special nature of the appearance. We reject this argument. The answer asserted that the court lacked jurisdiction over the defendant. See *Blitzer* v. *Blitzer*, 361 Mass. 780, 782 (1972).

[7] The plaintiff suggests that, as neither the Federal nor the Massachusetts Rules of Civil Procedure, on which the Massachusetts Rules of Domestic Relations Procedure are based, provide guidance on the question whether an assertion of a claim for affirmative relief waives the defense of lack of jurisdiction, we are properly guided by looking to our earlier decisions and to Federal case law. Cf. 5 C.A. Wright & A.R. Miller, *supra* § 1397. See *Merz* v. *Hemmerle*, 90 F.R.D. 566, 568-569 (1981); *Neifeld* v. *Steinberg*, 438 F.2d 423, 426 (3d Cir. 1971). Relying on *Farley* v. *Sprague*, 374 Mass. 419, 423-424 (1978), in which we held that the adjudged construction given the earlier Federal rule is to be given to our rule absent compelling reasons to the contrary, the defendant also cites to us several Federal cases. On our view of the defendant's answer, it is unnecessary for us to discuss the Federal decisions cited by either party.

[8] On appeal the defendant does not argue the applicability of the defense to this action. See *Fisher* v. *Fisher*, 349 Mass. 675, 677 (1965). Compare *Murphy* v. *Murphy*, 380 Mass. 454, 461 (1980); *Holsinger* v.

In ruling that the defendant submitted to the jurisdiction of the court, the judge also relied upon our pre-rules decision in *Leffler* v. *Todd,* 316 Mass. 227 (1944). It is not necessary for us to analyze carefully that decision for what may well be distinguishing facts. We are not inclined to hold that, because the concluding words of the answer mirrored the concluding words of the complaint by a prayer for such other relief as the court might deem proper, the defendant waived his assertion that the court lacked jurisdiction over him.

2. *Exercise of quasi-in-rem jurisdiction.* We next consider the judge's ruling that quasi-in-rem jurisdiction provided a basis for ordering that the defendant's military pension be garnished. We need not reach the question whether the judge's ruling in reliance on our decision in *Blitzer* v. *Blitzer,* 361 Mass. 780 (1972), satisfies the requirements of the later United States Supreme Court decisions in *Shaffer* v. *Heitner,* 433 U.S. 186 (1977), or in *Rush* v. *Savchuk,* 444 U.S. 320 (1980),[9] as we conclude that the property on which

---

*Holsinger,* 357 Mass. 1 (1970). Our holding is limited to a determination that the defendant's second "affirmative defense" did not constitute a request for affirmative relief.

[9] In *Shaffer* v. *Heitner,* 433 U.S. 186 (1977), the Supreme Court invalidated a Delaware statute permitting the Delaware courts to assume jurisdiction by the sequestration of a defendant's property within that State. In holding that the test of fair play and substantial justice employed in in personam jurisdiction should be applied to determine in rem and quasi-in-rem jurisdiction, the Court said: "[J]urisdiction over many types of actions which are now or might be brought *in rem* would not be affected by a holding that any assertion of state-court jurisdiction must satisfy the *International Shoe* [*Co.* v. *Washington,* 326 U.S. 310 (1945)] standard. For the type of *quasi in rem* action typified by *Harris* v. *Balk* [, 198 U.S. 215 (1905)] and the present case, however, accepting the proposed analysis would result in significant change. These are cases where the property which now serves as the basis for state-court jurisdiction is completely unrelated to the plaintiff's cause of action. Thus, although the presence of the defendant's property in a State might suggest the existence of other ties among the defendant, the State, and the litigation, the presence of the property alone would not support the State's jurisdiction. If those other ties did not exist, cases over which the State is now thought to have jurisdiction could not be brought in that forum." *Id.* at 208-209.

In *Rush* v. *Savchuk,* 444 U.S. 320 (1980), the Court reversed the Minnesota court's upholding, pursuant to the State garnishment statute, of

exercise of quasi-in-rem jurisdiction was predicated was not subject to the exercise of jurisdiction on such basis. The divorce decree ordered the defendant to pay the sum of $220 a month to the plaintiff toward the support of the minor children, and to maintain his Navy I.D. card, so called, for their benefit. The defendant elected to authorize that payments be deducted from his military pension and forwarded from the Navy's Family Allowance Activity headquarters in Cleveland, Ohio, to the plaintiff at an address she could specify. From 1973 until the plaintiff moved with the children to Massachusetts in 1976, the payments were sent to the State of Rhode Island. Presumably the benefits attendant on the defendant's maintenance of his Navy I.D. card were available to the children during that period in the State of Rhode Island. Thus, while the source of the payments remained at all times in Ohio, and the source of the card's benefits remained there or with the defendant (a fact not determinable by the record), the payments and benefits which the judge found to be present in Massachusetts from 1976 to 1979 would have been present to precisely the same extent in Rhode Island from 1973 to 1976. The location of the res on this theory would depend, not upon the actions of the defendant or the presence of his debtor, but upon the transience of the plaintiff.[10]  The res had no existence in Massachusetts until her arrival, and would cease to exist here upon her relocation outside our borders. Thus it was

quasi-in-rem jurisdiction over a nonresident defendant by garnishing the contractual obligation of the defendant's insurer, who did business in Minnesota. The Court said: "The insurer's contacts with the forum are attributed to the defendant because the policy was taken out in anticipation of such litigation. The State's interests in providing a forum for its residents and in regulating the activities of insurance companies are substituted for its contacts with the defendant and the cause of action. . . . In other words, the plaintiff's contacts with the forum are decisive in determining whether the defendant's due process rights are violated. Such an approach is forbidden by *International Shoe* and its progeny." *Id.* at 332.

[10] That the United States, under 42 U.S.C. § 659 (1976 & Supp. 1983) is subject to process to enforce child support obligations does not alter the fact that the enforcing court must have jurisdiction to enter a valid judgment and order.

error for the judge to base an exercise of quasi-in-rem juris-diction on the interest of the defendant in his military pen-sion and Navy I.D. card. See generally 4 C.A. Wright & A.R. Miller, Federal Practice and Procedure §§ 1070-1072 (1969 & Supp. 1983).

3. *Assertion of jurisdiction over the defendant.* Finally, we address the question of the Probate Court's assertion of per-sonal jurisdiction over the defendant. Authority for the asser-tion of such jurisdiction does not exist in G. L. c. 208, § 29, and must be found in the provisions of our long arm statute. General Laws c. 223A, § 3, "asserts jurisdiction over the per-son to the constitutional limit only when some basis for juris-diction enumerated in the statute has been established. Although presented with jurisdictional facts sufficient to sur-vive due process scrutiny, a judge would be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites." *Good Hope Indus., Inc.* v. *Ryder Scott Co.,* 378 Mass. 1, 6 (1979). See *Carlson Corp.* v. *University of Vt.,* 380 Mass. 102, 105 (1980); *Burtner* v. *Burnham,* 13 Mass. App. Ct. 158, 161-162 (1982); *Nova Biomedical Corp.* v. *Moller,* 629 F.2d 190, 192-193 (1st Cir. 1980); *A.J. Cunningham Packing Corp.* v. *Florence Beef Co.,* 529 F. Supp. 515, 518 (D. Mass. 1982). When the assertion is challenged under Mass. R. Civ. P. 12 (b) (2), it is the plain-tiff's burden to establish sufficient facts on which to base juris-diction. *Good Hope Indus., Inc.* v. *Ryder Scott Co., supra* at 3. Whether jurisdiction will be found is a determination sensi-tive to the particular facts of each case. *Id.* at 2, and cases cited. Here, the judge based the exercise of jurisdiction on G. L. c. 223A, § 3 (*a*) and (*c*).[11]

---

[11] General Laws c. 223A, § 3, as amended through St. 1976, c. 435, pro-vides in pertinent part: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

(*a*) transacting any business in this commonwealth;

". . . .

(*c*) causing tortious injury by an act or omission in this commonwealth." General Laws c. 223A, § 3 (*g*), providing for jurisdiction over a party to a marriage contract where the marital domicil was within the Common-

In *Ross* v. *Ross,* 371 Mass. 439 (1976), we said that the reference in c. 223A, § 3 (*a*), to "transacting any business" is not limited to commercial activity, and includes "any purposeful acts by an individual, whether personal, private, or commercial" (citations omitted). *Id.* at 441. There the nonresident defendant had executed a separation agreement several months before a decree nisi of divorce was entered in a Massachusetts Probate Court. Six years later the defendant successfully petitioned the Probate Court to modify the decree, seeking alimony and an increase in child support. In reversing the dismissal of the plaintiff's subsequent action to enforce the terms of the separation agreement, we held that the defendant's invocation of the power of a court of the Commonwealth, and the parties' intention that their agreement should be construed and governed in accordance with Massachusetts law, satisfied the requirement of *International Shoe Co.* v. *Washington,* 326 U.S. 310, 316 (1945), that the defendant have "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 441. We further held that the defendant's seeking modification of the original support order and counsel fees was a purposeful act which invoked "the benefits and protections of [our] laws. *Hanson* v. *Denckla,* [357 U.S. 235,] 253 [(1958)]." *Id.* at 441-442. See *"Automatic" Sprinkler Corp. of America* v. *Seneca Foods Corp.,* 361 Mass. 441, 443-444 (1972).

In the instant case, the judge based his assertion of jurisdiction on the monthly support payments sent to Massachusetts for three years, the maintenance of the defendant's Navy I.D. card for the children's benefit, the defendant's letters, gifts, and cards to the children and telephone conversations with them, a letter from the defendant to the plaintiff's lawyer, and the fact that Massachusetts was the first marital home of the parties. We do not think that these circumstances, singly or in combination, meet the require-

wealth for at least one year of the two years prior to commencement of the suit, is not raised in this case, nor could it be.

ments of *International Shoe Co.* v. *Washington, supra,* and *Hanson* v. *Denckla, supra,* so as to justify an assertion of jurisdiction under G. L. c. 223A, § 3 (*a*). The support payments and benefits from the I.D. card were sent into Massachusetts, as they were sent into Rhode Island, as a result of the defendant's obligation under the court decree of that State. Indeed, it was the plaintiff who could and did affect a rerouting of the payments from State to State. See *Kulko* v. *Superior Court,* 436 U.S. 84, 93-94 (1978). *World-Wide Volkswagen Corp.* v. *Woodson,* 444 U.S. 286, 298 (1980), quoting from *Hanson* v. *Denckla, supra* at 253. See also *Davis* v. *Davis,* 452 F. Supp. 44, 46-47 (E.D. Pa. 1978) (judge predicted, after review of cases under long arm statute [later amended to apply to individuals to full constitutional limits], "that the Pennsylvania appellate courts will not determine that 'doing business' includes making payments under a separation agreement, particularly under circumstances where . . . the agreement was executed by the nonresident in [a sister State] and the parties agreed that [the law of the sister State] would be applied to the agreement"). Similarly, the defendant's communications with the children shown in the record (several letters and evidence of gifts, cards, and two telephone conversations) were personal contacts essentially unconnected with the children's residence. We are not in agreement with the judge that by such communications, the defendant "sought to put himself in spirit into the children's home in Massachusetts," thereby availing himself of the benefits and protections of our laws.[12] Cf. *Kulko* v. *Superior Court, supra* at 94.

Neither do we view the defendant's letter to the plaintiff's Massachusetts attorney, in which he stated an intent "to go

---

[12] The plaintiff suggests that, as two of the defendant's letters referred to a trip to Spain which he proposed for one of the children, and which never materialized, the letters related directly to the cessation of payments which occurred soon thereafter. This does not bear upon the determination of whether the defendant's communications, standing alone, constituted the transaction of business under G. L. c. 223A, § 3 (*a*). Cf. *A.J. Cunningham Packing Corp.* v. *Florence Beef Co.,* 529 F. Supp. 515-519 (D. Mass. 1982).

to court if necessary to defend my rights as a father" and said he was "contemplating asking for custody of my children and readjustment of the support requirement if custody isn't possible," as an intentional activity invoking the benefits and protection of Massachusetts law. It is true that a single act within the forum may, in a proper circumstance, be sufficient to warrant the assertion of jurisdiction over a defendant. See, e.g., *Van Wagenberg* v. *Van Wagenberg*, 241 Md. 154, cert. denied, 385 U.S. 833 (1966), cited in *Ross* v. *Ross, supra* at 442 (execution by defendant of separation agreement in New York, which obligated him to pay extraordinary medical expenses of child, was a transaction of business within that State). See also *McGee* v. *International Life Ins. Co.*, 355 U.S. 220 (1957), cited in *Carlson Corp.* v. *University of Vt., supra* at 106. Here, the defendant's letter, in response to a letter from the plaintiff's attorney concerning the defendant's termination of payments, could not be said to be a purposeful act warranting the exercise of jurisdiction under § 3 (a) of our long arm statute.

The defendant's two brief stays in Massachusetts, consisting of four months in 1962 and one month in 1970, do not bring him within the reach of G. L. c. 223A, § 3 (a).[13] Contrast *Kennedy* v. *Kennedy*, 10 Mass. App. Ct. 113, 119 (1980) (where parties were born and married in Massachusetts, purchased a home here within two weeks of defendant's departure, and where defendant was a legal and voting resident through the following year, in which separate support order was sought by plaintiff and granted, defendant was subject to the jurisdiction of the Probate Court under G. L. c. 223A, § 2 [domicil]; acquisition of the home and settling of his family also supported jurisdiction under § 3 [a]). Compare *Bjordahl* v. *Bjordahl*, 308 N.W.2d 817 (Minn. 1981) (court had jurisdiction, by virtue of continuing jurisdiction of Minnesota divorce decree, over defendant who had not resided or transacted business in State for

---

[13] The record does not support the plaintiff's contention that the defendant's domicil in Massachusetts in 1962 actually extended to 1970, uninterrupted by any changes except those required by his military service assignments.

twenty-two years). We conclude that there is no basis for the assertion of jurisdiction over the defendant under G. L. c. 223A, § 3 (a). Were we to hold otherwise, we doubt that assertion of jurisdiction over the defendant would survive due process scrutiny. Cf. *Kulko* v. *Superior Court, supra.*

The judge's ruling that the communications of the defendant to his children were materially false representations of his professed devotion on which the children relied to their detriment, see *Burtner* v. *Burnham,* 13 Mass. App. Ct. 158 (1982), and amounted to an injury triggering the assertion of jurisdiction under G. L. c. 223A, § 3 (c), cannot be upheld. This claim was not made in the complaint and evidence to support it is not to be found in the record before us.[14]

Having concluded that our long arm statute does not afford a basis for asserting jurisdiction over the defendant, we need not inquire into the constitutional constraints on the exercise of jurisdiction under the statute. See *Good Hope Indus., Inc.* v. *Ryder Scott Co., supra.* We acknowledge, however, the reliance of both parties on the recent United States Supreme Court decision in *Kulko* v. *Superior Court,* 436 U.S. 84 (1978). In that case, the California Supreme

---

[14] The plaintiff makes a further argument that the termination of support payments was an "affirmative, intentional wrongful act causing injury within this Commonwealth." We rejected this suggested application of G. L. c. 223A, § 3 (c). See and compare *Burtner* v. *Burnham,* 13 Mass. App. Ct. 158 (1982). See also *Wood* v. *Wood,* 369 Mass. 665, 672 (1976). We note that the Supreme Court of Illinois recently resolved the question whether the failure to pay child support money constitutes the commission of a tortious act in that State by holding that it would be unreasonable to subject the defendant to the court's jurisdiction in light of the recent United States Supreme Court decision in *Kulko* v. *Superior Court,* 436 U.S. 84 (1978). *Boyer* v. *Boyer,* 73 Ill. 2d 331, 340-341 (1978). Accord, *Duncan* v. *Duncan,* 94 Ill. App. 3d 868 (1981). See also *Davis* v. *Davis,* 452 F. Supp. 44, 46 (E.D. Pa. 1978) (long arm statute, providing for jurisdiction over nonresident whose out-of-State action [not omission] causes harm within State, held to require affirmative misconduct and not mere nonfeasance, and not to apply to action to enforce foreign separation agreement for overdue support payments). But see dictum in *Bjordahl* v. *Bjordahl,* 308 N.W.2d 817, 819 (Minn. 1981) (prior decision would seem to permit court to consider nonsupport "an act outside the state causing injury or damage inside the state").

Court upheld the assertion of jurisdiction over a New York defendant based on his causing an effect within the State by an act or omission outside the state, i.e., consenting to one of his children's living in California.[15]  The court held that exercise of jurisdiction was "reasonable" as the defendant had availed himself of the benefits and protections of the California laws by sending his child there to live during the school year.  The court also found that the defendant reaped a financial benefit from the child's presence in California for nine months of a year.  The Supreme Court, deciding the appeal on the basis of "whether the Constitution itself would permit the assertion of jurisdiction," id. at 90 n.4, reversed, holding that as the defendant "did not purposefully derive benefit from any activities relating to the State of California, it is apparent that the California Supreme Court's reliance on [defendant's] having caused an 'effect' in California was misplaced." Id. at 96.  While we do not today reach an analysis of the due process considerations which would be required by a determination that jurisdiction is authorized by our long arm statute, we note again that the similarities between the circumstances in Kulko and in the present case would suggest the same result here as there.[16]

---

[15] The plaintiff and the defendant, New York domiciliaries, had been married in California during a brief stay, had ultimately returned to New York, and had executed a separation agreement there.  Under the agreement, the two children of the marriage were to spend the school year with the defendant and specified vacation times with the plaintiff.  The defendant would also pay to the plaintiff $3,000 a year for support of the children while they were with the plaintiff.  Thereafter, the plaintiff obtained a Haitian divorce which incorporated the separation agreement, and she returned to California.  The following year, one child, with the defendant's consent, joined the plaintiff in California for the school year, spending vacation time with the defendant in New York.  Approximately two years later the plaintiff arranged for the other child to join her in California.  The plaintiff then brought an action in California to establish the Haitian decree as a California judgment, to modify the judgment so as to obtain full custody of the children, and to obtain an increase in child support obligations.

[16] In answer to the plaintiff's final argument, we do not think that the full faith and credit clause, art. 4, § 1, of the United States Constitution,

The judgment of the Probate Court is reversed.   The case is remanded for an order dismissing the action.

*So ordered.*

---

supplies or eliminates the requirement of jurisdiction in this case.   See Restatement (Second) of Conflict of Laws § 109 (1971).