**Petros A. PALANDJIAN, Plaintiff,**

v.

**Ashraf PAHLAVI, Defendant.**

**Civ. A. No. 83–2199–C.**

United States District Court,
D. Massachusetts.

May 10, 1984.

M. Frederick Pritzker, Elizabeth A. Ritvo, Brown, Rudnick, Freed & Gesmer, Boston, Mass., for plaintiff.

Harvey Weiner, Peabody & Arnold, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action brought by plaintiff Petros Palandjian, a Massachusetts resident, against Princess Ashraf Pahlavi, the twin sister of the late Shah of Iran. The defendant, an Iranian citizen, is presently living in exile. Plaintiff seeks damages in excess of thirty million dollars for his claims of breach of contract, conversion, unjust enrichment and quantum meruit. The Court has jurisdiction pursuant to 28 U.S.C. § 1332. The matter is presently before this Court on defendant's motion to dismiss for lack of personal jurisdiction and for insufficiency of service of process. Defendant also moves this Court to strike portions of two affidavits filed by plaintiff in opposition to defendant's motion to dismiss.

Plaintiff bears the burden of proving that the Court has personal jurisdiction over the defendant. *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 904 (1st Cir.1980). To make a prima facie showing of jurisdictional facts, the plaintiff "must go beyond the pleadings and make affirmative proof." *Chlebda v. H.E. Fortna & Bro., Inc.*, 609 F.2d 1022, 1024 (1st Cir.1979). The Court may consider affidavits relevant to the question of jurisdiction. *Jackson v. Sargent*, 394 F.Supp. 162, 165 n. 1 (D.Mass.1975). In this case, both parties have submitted affidavits. When considering a motion to dismiss, the Court must treat the facts contained in plaintiff's complaint and affidavits as true, and it must resolve any dispute in the facts in favor of the plaintiff. *Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661, 663 (1st Cir.1972).

A review of the record reveals the following basis for plaintiff's claims. In 1966, plaintiff resided in Belmont, Massachu-

setts, and was the president of a construction company located in Watertown, Massachusetts. Plaintiff first met the defendant in June 1966. Plaintiff and defendant then met several more times at various places in Massachusetts. During the course of these meetings, plaintiff and defendant entered into an oral contract whereby they agreed to develop a holiday resort, named Kazar Shahr, on the Caspian Sea in Iran. By this agreement, the defendant was to purchase the required real estate, the plaintiff was to finance and supervise the development of the land, and any profits from the project were to be divided equally between plaintiff and defendant. Plaintiff agreed to oversee the development of the project from his business office in Watertown, Massachusetts, and to visit the project site in Iran when necessary. Plaintiff and his brother formed a company, named Abadani Jazayer, to develop the project. Plaintiff's brother, who lived in Iran, became president of the company and was also to perform on-site supervision.

During the June 1966 meetings in Massachusetts, plaintiff also discussed with defendant the possibility of plaintiff's family obtaining the rights to an exclusive distributorship of Cessna Aircraft in Iran. Subsequently, the plaintiff's family obtained the Cessna distributorship in the name of Hooraseman Corporation. The defendant had a 15% interest in the corporation.

From 1966 through July 1969, plaintiff supervised the development of the Caspian Sea project, both by visiting the site and by performing work in his Watertown office. During this period, plaintiff received at his Belmont home and at his Watertown office numerous telephone calls from defendant during which calls they discussed the Kazar Shahr project. Also, plaintiff's architect performed work on the Caspian Sea project at that architect's office in Stoneham, Massachusetts. In July 1969, when plaintiff's brother died, plaintiff moved to Iran to assume his brother's responsibil-

ities. At that time, he became president of both Abadani Jazayer and the Hooraseman Corporation.

The Kazar Shahr project was ready for marketing in 1970. In late 1970, conflicts arose between plaintiff and defendant. The defendant ordered plaintiff out of the country and instructed him never to return to Iran. Fearing for his safety and the safety of his family, and fearing economic injury to his family's other business dealings in Iran, plaintiff complied with defendant's instructions. Defendant then appointed replacements for plaintiff to complete the Caspian Sea project and to run the Cessna distributorship.

Subsequently, and in response to demands from defendant's agents, plaintiff's father released plaintiff's interest in Abadani Jazayer to defendant's agents. Then, in 1971, an agent of the defendant visited plaintiff in Massachusetts and demanded, in a threatening manner, that plaintiff turn over his rights in the Cessna distributorship to the agent. Plaintiff did so. Later, in 1972, plaintiff's father was approached by an agent of the defendant who stated that defendant wanted to buy a certain office building owned by the Hooraseman Corporation. Again, the request was made in a threatening fashion. Defendant herself telephoned the plaintiff in Massachusetts and suggested to him that his father agree to sell the office building to the defendant. Subsequently, plaintiff's father signed over title to the Hooraseman office building to defendant's agents. He received no payment for the transfer.

Plaintiff initiated this lawsuit on July 27, 1983, seeking to recover from defendant the value of the time, labor, and materials he invested in the Caspian Sea project, any profits due plaintiff from his interest in the project, the value of plaintiff's property rights in the Cessna distributorship, and the value of plaintiff's father's interest in the Hooraseman office building.[1] Plaintiff asserts that this Court has jurisdiction over

---

1. Plaintiff alleges in the complaint that he is the assignee of the rights of his father, Grigor Pa-

landjian.

the defendant because his claims arise from transactions or tortious activity occurring in Massachusetts. M.G.L. c. 223A, § 3(a), (c) (Massachusetts' long-arm statute). Defendant disagrees and moves for dismissal of plaintiff's claims for lack of personal jurisdiction.

■ It is well-settled that the law of the forum state determines the amenability of a non-resident defendant to suit in a diversity action in federal court. *E.g., Caso v. Lafayette Radio Electronics Corp.*, 370 F.2d 707 (1st Cir.1966). The Massachusetts long-arm statute, M.G.L. c. 223A, § 3, provides in relevant part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to the cause of action in law or equity arising from the person's
> (a) transacting any business in this commonwealth; [or]
> (b) causing tortious injury by an act or omission in this commonwealth[.]

M.G.L. c. 223A, § 3(a), (b).

■ This Court must determine whether the actions of the defendant fall within the literal terms of M.G.L. c. 223A, § 3. The Court's inquiry, however, must not end there. The Court of Appeals for the First Circuit has noted on several occasions that Massachusetts courts have construed the statutory language of § 3 as imposing constraints on the assertion of *in personam* jurisdiction in addition to those imposed by the Constitution. *Nova Biomedical Corp. v. Moller*, 629 F.2d 190, 192 (1st Cir.1980). The jurisdictional analysis is thus twofold: "(1) is the assertion of jurisdiction authorized by the statute, and (2) if authorized, is the exercise of jurisdiction under [s]tate law consistent with basic due process requirements mandated by the United States Constitution?" *Hahn v. Vermont Law School*, 698 F.2d 48, 50 (1st Cir.1983), *quoting Good Hope Industries, Inc. v. Ryder Scott Co.*, 378 Mass. 1, 389 N.E.2d 76 (1979). Only when both questions are answered affirmatively may a court exercise jurisdiction over a given defendant.

Based on the record, the Court makes the following rulings: the Court has jurisdiction under c. 223A, § 3(a), to hear plaintiff's contract claim regarding Kazar Shahr; the Court has jurisdiction under c. 223A, § 3(b), to hear plaintiff's tort claim regarding his property rights in the Cessna Aircraft distributorship; but, the Court does not have jurisdiction to hear plaintiff's tort claim regarding the Hooraseman office building.

■ The Court has jurisdiction over plaintiff's claim regarding Kazar Shahr because the record shows that it was in Watertown, Massachusetts, that the defendant and plaintiff entered into the alleged contract to develop the holiday resort. Entering into a contract in Massachusetts certainly qualifies as the "transacting [of] business in this Commonwealth" as that term is used in c. 223A, § 3(a). *See Carlson Corp. v. University of Vermont*, 380 Mass. 102, 105, 402 N.E.2d 483 (1980). As for plaintiff's claim regarding the Cessna Aircraft distributorship, plaintiff alleges that an agent of the defendant came to Massachusetts and forced him to turn over his interest in the corporation. Therefore, the act allegedly causing the tortious injury occurred in Massachusetts, as is required by § 3(b) of this state's long-arm statute. Because plaintiff's first two causes of action arose from activities that occurred in Massachusetts, this Court has jurisdiction over them under the terms of the long-arm statute.

■ Plaintiff's claim with respect to the Hooraseman office building, however, requires a different ruling. The act which allegedly caused plaintiff's father to turn over the office building to the defendant occurred in Iran. The only connection Massachusetts has to this claim is that plaintiff alleges that the defendant made a telephone call to the plaintiff in Massachusetts suggesting that he advise his father to transfer the building to the defendant. The record does not show that the telephone call in any way caused the subsequent transfer of the office building. This action by the defendant, then, is insuffi-

cient to bring this last claim within the literal terms of c. 223A, § 3(b).

Having ruled that the Massachusetts long-arm statute authorizes this Court to assert jurisdiction over certain of plaintiff's claims, the next matter for the Court to consider is whether the assertion of jurisdiction is consistent with the requirements of due process. In *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny, the United States Supreme Court determined that a court may assert jurisdiction over a person only if that person has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158. *See also Carlson Corp. v. University of Vermont,* 380 Mass. 102, 105, 402 N.E.2d 483 (1980). A court's analysis should focus on the "relationship among the defendant, the forum, and the litigation," *Helicopteros Nacionales de Columbia v. Hall,* —— U.S. ——, ——, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984), and on whether the defendant "purposefully avail[ed herself] of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

■ On the basis of the record, I rule that the defendant's contacts with Massachusetts are such that the assertion of jurisdiction by this Court would be consistent with the requirements of due process. With respect to the claim involving Kazar Shahr, the defendant came into Massachusetts and allegedly entered into an oral contract with plaintiff in the Commonwealth to develop the resort. As part of their agreement, plaintiff was to perform certain services in Massachusetts. Plaintiff, and his architect, did in fact perform work in Massachusetts on the contract. In addition, plaintiff alleges that defendant made many telephone calls to Massachusetts to discuss with plaintiff his progress on the contract. As to the claim involving the Cessna Aircraft distributorship, an agent of the defendant entered Massachusetts and allegedly coerced plaintiff into relinquishing his interest in the Hooraseman Corporation. The actual transfer of documents necessary to effect the transfer is alleged to have occurred in Massachusetts. The Court rules, on the basis of these allegations, that the defendant and her agents purposely engaged in activities in the Commonwealth. The Court further rules that defendant's conduct and connection with Massachusetts "are such that [she] should reasonably anticipate being haled into court [here]." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

Defendant also moves this Court to dismiss plaintiff's complaint for insufficiency of service of process. The record shows that plaintiff engaged a process server to serve the defendant at 625 Park Avenue, New York, New York. Plaintiff believed that the apartment building located at this address was defendant's New York residence. The process server, Anthony Lee, waited outside the building for more than twenty hours over the course of four days. During this time, Mr. Lee told several different doormen that he had a summons to serve on the defendant. Each doorman called defendant's apartment on the intercom to inform defendant or her representatives that he had a process to serve on her. Mr. Lee was informed by each doorman that "they will not accept." On September 13, 1983, at 8:00 p.m., Mr. Lee delivered a copy of the summons and complaint in this case to the doorman on duty at 625 Park Avenue. Mr. Lee verified with the doorman that the defendant did in fact reside at that address. Thereafter, the process server mailed a copy of the summons and complaint to the defendant at 625 Park Avenue, New York.

Federal Rule of Civil Procedure 4(e) provides that service outside of Massachusetts must be accomplished in accordance with the law of Massachusetts. M.G.L. c. 223A, § 6 a, provides, in relevant part:

(a) When the law of this commonwealth authorizes service outside this commonwealth, the service, when reasonably calculated to give actual notice, may be made:

> (2) in the manner prescribed by the law of the place in which the service is made for service in that place in an action in any of its courts of general jurisdiction.

The law of New York, the place where service was made, provides:

> Personal service upon a natural person shall be made ... (2) by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by mailing the summons to the person to be served at his last known residence....

N.Y. CPLR § 308(2) (McKinney Supp.1982). This so-called "leave and mail" statute requires the process server to perform two separate steps: first, the server must leave the summons at the defendant's "actual place of business, dwelling place or usual place of abode;" second, the server must mail a copy to the defendant's "last known residence." In her motion and memorandum, defendant asserts that plaintiff's performance of the first step was defective and, therefore, the complaint should be dismissed.

First, defendant argues that 625 Park Avenue is not her "dwelling place or usual place of abode" within the meaning of CPLR § 308(2). Defendant states that 625 Park Avenue is not her "principal" residence, as she "usually" lives in France. Defendant admits, however, that she owns and maintains a cooperative apartment at 625 Park Avenue and that she resides at that apartment when she visits New York. Defendant also admits that since 1979 she has spent approximately four months a year in New York. The remainder of the year the defendant resides in France and Egypt, among other places.

■ The Court is guided in its interpretation of CPLR § 308(2) by the factually-similar case of *Karlin v. Avis,* 326 F.Supp. 1325 (E.D.N.Y.1971). In that case, the Court wrote:

> In a highly mobile society it is unrealistic to interpret CPLR § 308(2) as mandating service at only one location where, in fact, a defendant maintains several dwelling places.... That [the defendant] is not a resident of New York and that [s]he spends a considerable amount of time elsewhere does not mean that the apartment [in New York] is not h[er] dwelling place.

326 F.Supp. at 1329–30. Based on the facts in the record, and for the reasons set forth by the court in *Karlin,* this Court rules that defendant's apartment at 625 Park Avenue is her "dwelling place" under CPLR § 308(2). *Accord, Mangold v. Neuman,* 87 A.D.2d 232, 449 N.Y.S.2d 232 (1982) (dissent). *See also Smithtown General Hospital v. Quinlivan,* 88 Misc.2d 1031, 389 N.Y.S.2d 776 (1976).

■ Second, defendant argues that the delivery of the papers to the doorman in the lobby of defendant's apartment building was not delivery "at [defendant's] actual dwelling place" as is required by CPLR § 308(2).[2] However, "if a process server is not permitted to proceed to the actual apartment by the doorman or some other employee, the outer bounds of the actual dwelling place must be deemed to extend to the location at which the process server's progress is arrested." *F.I. DuPont, Glore Forgan & Co. v. Chen,* 41 N.Y.2d 794, 396 N.Y.S.2d 343, 346, 364 N.E.2d 1115, 1117 (1977). In this case, that location was the apartment lobby. The Court rules, therefore, that plaintiff met the service requirements of CPLR § 308(2) by leaving the summons and complaint with the doorman in the lobby.

Defendant has also filed two motions to strike parts of affidavits submitted by plaintiff. Defendant requests that this

---

**2.** Defendant does not appear to contest that the doorman served was "a person of suitable age and discretion," which is also a requirement of CPLR § 308(2).

Court strike portions of the affidavit of plaintiff Petros Palandjian for several reasons: the affiant lacks personal knowledge as to the matters asserted in certain sentences; two sentences contain hearsay; and one sentence contains a conclusion of law. Defendant asks that two sentences be struck from the affidavit of Robert M. Mardirosian because, defendant asserts, the affiant lacks personal knowledge as to the matters asserted therein.

Defendant's criticisms of the affidavits at issue are not persuasive. The arguments made by defendant are relevant to the weight to be given the affidavit testimony, but they are not reasons to strike the challenged portions. This, then, is not the appropriate situation in which to strike portions from affidavits.[3] The Court therefore rules that defendant's motions to strike should be denied.

---

3. I note that, were the Court to strike the challenged sentences, it would in no way alter the other rulings contained in this memorandum.