The LANDMARK BANK, Plaintiff,

v.

Joseph J. MACHERA, Defendant and Third–Party Plaintiff,

v.

Robert H. HAINES, III; the R. Roberts Company; Priscilla L. Baldwin; and Ommen Associates Limited Partnership, Third–Party Defendants.

Civ. A. No. 89–1931–Y.

United States District Court, D. Massachusetts.

April 23, 1990.

James Ackerman and William Hanlon, Day, Berry & Howard, Boston, Mass., for plaintiff.

Mark Machera and Theresa Bisenius, Revere, Mass., for defendant and third-party plaintiff.

Thomas Kenefick and Martine Reed, Cooley, Shrair, Alpert, Labovitz & Dambrov, Springfield, Mass., for third-party defendants.

## MEMORANDUM OF OPINION AND ORDER

YOUNG, District Judge.

Third-party defendants Robert H. Haines, III ("Haines"), Priscilla L. Baldwin ("Baldwin"), the R. Roberts Company ("Roberts"), and Ommen Associates Limit-

ed Partnership, Inc. ("Ommen Associates") move this Court pursuant to Fed.R.Civ.P. 12(b)(1) and (2) to dismiss the third-party claims asserted against them by Joseph J. Machera ("Machera"), third-party plaintiff and the defendant in the underlying case. The third-party defendants argue that the Court lacks both subject-matter and personal jurisdiction.

For the reasons that follow, the Court has decided to deny the motion in part and grant it in part. Specifically, the Court denies the motion to dismiss for lack of subject-matter jurisdiction but, as to Haines only, grants the motion to dismiss for lack of personal jurisdiction. As to the other third-party defendants, the Court holds that it may properly exercise personal jurisdiction and denies the motion.

## I. BACKGROUND

This is a case about an investment scheme that went sour. At the center of the controversy is Ommen, a show-jumping stallion who unfortunately proved not nearly as hot-to-trot as his investors had hoped.

The basic facts are straightforward. On or about July 20, 1987, the defendant Machera, a Massachusetts resident, signed a promissory note to the plaintiff, The Landmark Bank ("Landmark"), a Connecticut resident, in the principal amount of $111,400. Under the terms of the note, Machera promised to make three consecutive annual payments of $37,133. Machera also promised to pay interest on the unpaid balance twice a year, on or before the 30th day of each January and June. Machera made the required payments during 1988, but failed to make a $4,005 interest payment due January 30, 1989 and the $37,133 principal payment due June 30, 1989, plus the interest due thereon. When Machera so defaulted, Landmark exercised its right under the note to demand payment of the entire unpaid balance. Machera refused, and continues to refuse, to pay.

Landmark thereupon brought this action against Machera to recover $84,104.24, plus interest, costs, and attorneys fees. Jurisdiction in this Court is premised on diversity of citizenship pursuant to 28 U.S.C. sec. 1332 (1988).

In his answer, Machera admits that he executed the promissory note in question, but claims that he did so because of the false and fraudulent misrepresentations of Landmark through its director, Haines. Machera states that Haines arranged for him to obtain financing through Landmark for the purchase of two shares of Ommen Associates. Haines is President and Director of Roberts, one of two general partners in Ommen Associates. The other is Baldwin. Ommen Associates was formed "to purchase, show, breed and sell Ommen, an eight-year old show-jumping stallion." Private Placement Memorandum for Ommen Associates, Answer, ex. "A" [hereinafter Private Placement Memorandum].

Machera alleges that Haines, individually and through Ommen Associates and its general partners Baldwin and Roberts, represented to him that a buyer for all shares in Ommen Associates existed and that Machera would realize a profit on his investment without having to make any payment under the promissory note. No such buyer existed. Machera claims that Haines knew there was no buyer for Ommen Associates and made the false representations in question to induce Machera to sign the promissory note. Machera further claims that Haines, through Roberts, Baldwin and Ommen Associates, backdated the July 20, 1987 note to March 31, 1987 in order to comply with the Private Placement Memorandum.[1] Finally, he asserts that Haines, through the others, failed to convey ownership interest in the two units after he had made the $111,400 payment, giving title instead to Mark Sanderson ("Sanderson"), an acquaintance of Machera's.

---

1. The Private Placement Memorandum states: If 50 Units have not been sold by March 31, 1987, and the Corporate General Partner chooses not to purchase Units which remain unsold on that date, then all subscriptions will be terminated, and funds advanced by the subscribers shall be promptly returned in their entirety.
Private Placement Memorandum for Ommen Associates, Answer, ex. "A."

Machera has counterclaimed against Landmark, Haines, Baldwin, Roberts and Ommen Associates. Each of the defendants-in-counterclaim [2] is a resident of Connecticut. The counterclaims allege unfair and deceptive trade acts and practices, in violation of Mass.Gen.L. ch. 93A, sec. 2 (1986) and Conn.Gen.Stat. sec. 42–110b (1989); [3] and fraud in the offering and sale of securities, in violation of Mass.Gen.L. ch. 110A, sec. 410 (1986) and Conn.Gen.Stat. sec. 36–498 (1989). A further counterclaim directed against Landmark alone asserts failure to register with the Massachusetts Secretary of State before offering securities for sale to Massachusetts residents, in violation of Mass.Gen.L. ch. 110A, sec. 201(a) (1986). Machera seeks damages in the amount of $111,400.

Eager to return this case to the mundane status of a simple action to recover upon a promissory note, the third-party defendants have moved to dismiss the counterclaims for lack of subject-matter and personal jurisdiction. As is detailed below, the Court denies the motion in part and grants it in part.

## II. SUBJECT–MATTER JURISDICTION

■ The plaintiff, Landmark, and the four defendants-in-counterclaim are all residents of Connecticut. As a result, the third-party defendants argue that their presence in the lawsuit destroys the requisite diversity of citizenship. They further argue that an independent basis for subject-matter jurisdiction, such as ancillary jurisdiction, does not exist, because Machera's counterclaim is not compulsory under Fed.R.Civ.P. 13(a). Machera apparently does not contest the absence of diversity, for in his brief he argues only that the Court should exercise ancillary jurisdiction over the counterclaims.

This issue can be dealt with simply and summarily. The presence of the third-party defendants does *not* destroy diversity. It appears that the defendants-in-counterclaim have succumbed to a simplistic definition of diversity that turns not on the ultimate interests of the litigants but on the formal title of each party in the pleadings. As they would have it, for diversity purposes any party whose formal title includes the word "defendant" cannot be from the same state as the nominal plaintiff.

While the defendants-in-counterclaim are correct to assert that both Article III and the statutory grant of diversity in 28 U.S.C. sec. 1332 have been interpreted to require complete diversity, *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), in determining whether such diversity exists, the Court has a duty to "look beyond the pleadings and arrange the parties according to their sides in the dispute." *City of Dawson v. Columbia Avenue Saving Fund, Safe Deposit, Title & Trust Co.*, 197 U.S. 178, 180, 25 S.Ct. 420, 421, 49 L.Ed. 713 (1905). The Court is not bound by the way the parties are formally aligned in the pleadings. *See* 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* sec. 3607 at 430 (1984). Instead, the Court must realign the litigants so that the parties with the same "ultimate interests" in the outcome are on the same side. *Id.* at 433.

Realigning the parties in this manner, it is clear that the parties with opposing ultimate interests are all from different states. This is an action between Machera—a Massachusetts resident—on the one side, and Landmark, Haines, Baldwin, Roberts and Ommen Associates—Connecticut residents—on the other. The essence of Machera's counterclaim and defense to the underlying action is that he was defrauded by the other parties to induce him to invest in Ommen Associates. Diversity, therefore,

---

**2.** For purposes of this motion, it makes no difference whether the third parties are referred to as "defendants-in-counterclaim" pursuant to Fed.R.Civ.P. 13 or as "third-party defendants" pursuant to Fed.R.Civ.P. 14. The Court therefore uses the terms interchangeably. *See H.L. Peterson Co. v. S.W. Applewhite*, 383 F.2d 430,

433 (5th Cir.1967) ("[t]he court had jurisdiction over [the third party] whether it be styled a third party defendant or an additional party under the counterclaim rule.").

**3.** The promissory note provides that Connecticut law governs. Complaint, ex. "A".

is present between the two sides to this dispute.[4]

■ In short, this Court has subject-matter jurisdiction over Machera's counterclaims.[5]

## III. PERSONAL JURISDICTION

Although the Court possesses subject-matter jurisdiction, it must nonetheless have personal jurisdiction over the third-party defendants in order to proceed against them. Rule 13(a) specifically precludes compulsory counterclaims that require for adjudication the presence of third parties over whom "the court cannot acquire jurisdiction." Fed.R.Civ.P. 13(a).

This issue presents a closer call for the Court. In examining it, the Court is reminded that "[p]ersonal jurisdiction, and specifically the constitutionality of State application of long arm statutes, is a topic which over the years has puzzled first year law students and learned jurists alike." *Hugel v. McNell*, 886 F.2d 1, 3 (1st Cir. 1989), *petition for cert. denied*, —— U.S. ——, 110 S.Ct. 1808, 108 L.Ed.2d 939 (1990).

Perhaps it would be best to begin with some general observations. There are two types of personal jurisdiction: general and specific. *See Thompson Trading Ltd. v. Allied Lyons PLC*, 123 F.R.D. 417, 425–26 (D.R.I.1989), *reconsideration denied*, 124 F.R.D. 534 (D.R.I.1989). The concept of general jurisdiction calls for an examination into whether a defendant has such purposeful and systematic contacts with a forum state as to justify the exercise of personal jurisdiction over it by the forum's courts in *any* matter. The paradigmatic general jurisdiction defendant is one of the forum's domiciliaries. Specific jurisdiction, on the other hand, depends on the relationship between the contacts giving rise to personal jurisdiction and the activities underlying the cause of action. With specific jurisdiction, therefore, the necessary level of minimum contacts can be quite low—indeed, a single contact with the forum can be sufficient, as long as the cause of action arises out of the contact. *See id.; see generally* Von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv.L.Rev. 1121, 1136–64 (1966). General jurisdiction commonly applies to breach-of-contract situations; spe-

**4.** *Cf. Applewhite*, 383 F.2d 430 (diversity destroyed where third-party defendant was a resident of the same state as the defendant). Here, by contrast, the third parties reside in the same state as the *plaintiff*. The parties with opposing ultimate interests are from different states.

**5.** Even if diversity were missing, this Court would still possess subject-matter jurisdiction under the doctrine of ancillary jurisdiction. Where a counterclaim is compulsory, it "fall[s] within the ancillary jurisdiction of a federal court even if there is no other basis for federal jurisdiction." *McCaffrey v. Rex Motor Transportation, Inc.*, 672 F.2d 246, 248 (1st Cir.1982). *See also Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974); *Federal Deposit Insurance Corp. v. Otero*, 598 F.2d 627, 630 (1st Cir.1979); *Bowers v. Moreno*, 520 F.2d 843, 847 (1st Cir. 1975).

Rule 13(a) of the Federal Rules of Civil Procedure defines a compulsory counterclaim as one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Rule 13(h) in turn permits a defendant to join additional parties to

a counterclaim in accordance with the joinder provisions of Rules 19 and 20. *But cf. Finley v. United States*, —— U.S. ——, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) (Scalia, J. expressing in *dicta* doubt whether the Supreme Court would still be willing to uphold ancillary jurisdiction over Rule 13(h) parties who are added to a proper compulsory counterclaim, despite a long history to the contrary).

Assuming that the Court can acquire jurisdiction over the third parties, *see infra* part III, the question becomes whether Machera's counterclaims "arise[ ] out of the same transaction or occurrence" as Landmark's claim. Fed.R.Civ.P. 13(a). The Supreme Court has interpreted the phrase "transaction or occurrence" broadly to require only a "logical connection" between the claim and counterclaim. *Baker*, 417 U.S. at 469 n. 1, 94 S.Ct. at 2506 n. 1; *see also McCaffrey*, 672 F.2d at 248. By this standard, it seems clear that Machera's counterclaims bear a logical connection, or relationship to the underlying action. His counterclaims essentially restate in affirmative form his defense to Landmark's action. The questions of law and fact are virtually identical. *See id.*

Consequently, Machera's counterclaims are compulsory under Rule 13(a), and the exercise of ancillary jurisdiction would be appropriate.

cific jurisdiction is more often appropriate to allegations of tortious conduct.

## A. Determining the Relevant Contacts

A preliminary step is to determine which of the alleged contacts between the third-party defendants and the Massachusetts forum the Court should properly consider in its personal jurisdiction analysis.[6]

When a defendant challenges personal jurisdiction, the burden of proof is on the plaintiff (here, Machera) to "establish sufficient facts to support a prima facie case authorizing personal jurisdiction over the defendant under both the forum's long-arm statute and the due process clause of the Constitution." *U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.*, 894 F.2d 9, 11 (1st Cir.1990); *see also American Express International, Inc. v. Mendez–Capellan*, 889 F.2d 1175, 1178 (1st Cir.1989); *Ealing Corp. v. Harrods Ltd.*, 790 F.2d 978, 979 (1st Cir.1986). In making out his prima facie case, however, Machera cannot rest upon the mere allegations in his complaint. Instead, he "must go beyond the pleadings and make affirmative proof." *Chlebda v. H.E. Fortna & Brother, Inc.*, 609 F.2d 1022, 1024 (1st Cir.1979); *see also Salvador v. Meese*, 641 F.Supp. 1409, 1412 (D.Mass.1986); *Palandjian v. Pahlavi*, 586 F.Supp. 671, 672 (D.Mass.1984), *appeal denied*, 782 F.2d 313 (1st Cir.1986). The Court must accept Machera's properly supported allegations as true and resolve all factual disputes in his favor. *Murphy v. Erwin–Wasey, Inc.*, 460 F.2d 661, 663 (1st Cir.1972) ("[The Court is] required, in the absence of convincing evidence to the contrary, to accept these allegations as true"); *Palandjian*, 586 F.Supp. at 672 ("[T]he Court must treat the facts contained in plaintiffs ... affidavits as true, and it must resolve any dispute in the facts in favor of the plaintiff").[7]

---

**6.** The Court's job in this respect has unfortunately been made more difficult by the failure of Machera's counsel to detail what he believes to be the relevant contacts.

**7.** This Court well recognizes that the language adopted by the First Circuit in *The General Contracting & Trading Co., LLC v. Interpole Inc.*, 899 F.2d 109, 115–116 (1st Cir.1990) casts considerable doubt on the continued vitality of that aspect of *Murphy v. Erwin–Wasey, Inc.* cited in the text and therefore upon the methodology followed by this Court in resolving the instant motion. See especially the conclusions, "[W]e think the court below erred in refusing to take evidence" on a motion to dismiss for lack of personal jurisdiction, *General Contracting, supra* at 115, and "[I]t was an abuse of discretion not to grant appellant's request for an evidentiary hearing or at least to establish some sort of alternate factfinding procedure." *Id.* at 116.

True, none of the parties to the instant case ever requested an evidentiary hearing on this motion but the Court must confess candidly that, had such a request been made, it would have been denied out of hand. Until the *General Contracting* decision was issued, this Court had never supposed that it was to conduct an evidentiary hearing or engage in factfinding in determining a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). Rather, this Court had followed the carefully reasoned—and perhaps constitutionally mandated—procedure explicated by Judge Keeton in *North American Video Corp. v. Leon*, 480 F.Supp. 213, 215–16 (D.Mass.1979) and followed in *Gilday v. Quinn*, 547 F.Supp. 803, 806

(D.Mass.1982) (Caffrey, C.J.) and *Violet v. Picillo*, 613 F.Supp. 1563, 1566 (D.R.I.1985) (Pettine, J.). Indeed, this Court has had occasion to consider the situation that results when, after a court rules that the proponent of jurisdiction has made out a prima facie case on that point, the jury nevertheless finds facts that would have precluded the exercise of personal jurisdiction. *Val Leasing, Inc. v. Hutson*, 674 F.Supp. 53 (D.Mass.1987).

It may be that *General Contracting sub-silentio* overrules that aspect of *Murphy v. Erwin–Wasey* quoted in the text and signals an end to the procedure of determining personal jurisdictional questions upon a consideration whether, through properly supported affidavits, the proponent of personal jurisdiction has made out a prima facie case. Since the focus of *General Contracting*, however, appears to concern the lack of any hearing whatsoever and the misallocation of the burden of going forward, this Court concludes that such procedure is still proper unless the proponent of jurisdiction proffers affidavits that are internally inconsistent, patently incredible, or such affidavits are controverted by properly supported counter-affidavits which detail corroborating circumstances that clearly indicate their trustworthiness. It is only in one of these latter three situations that *General Contracting* would appear to require an evidentiary hearing on the jurisdictional issue.

Here, where the Court has offered discovery on jurisdictional issues, *see* footnote 9 *infra*, and has held a hearing at which counsel developed their arguments orally, and where there is no substantial dispute concerning the extent and nature of the contacts with the forum, this

■ Machera asserts that his counterclaims arise directly from the conduct of the third-party defendants in Massachusetts. With little support from affidavits and the like, he argues that Haines, Baldwin and Roberts, through Ommen Associates, directly solicited potential investors in Massachusetts. Machera asserts in conclusory fashion throughout the pleadings that the defendants-in-counterclaim made telephone calls to him in Massachusetts, sent sales literature and documents to him in this state, and did in fact sell him two units in Ommen Associates.[8] Furthermore, he claims that the defendants-in-counterclaim filed an application for registration with the Securities Division of the Secretary of State in August 1986 pursuant to Mass. Gen.L. ch. 110A, sec. 301. These activities, argues Machera, provide the necessary minimum contacts with the Commonwealth that would allow this Court to assert personal jurisdiction over the third-party defendants.

These blanket assertions alone cannot form the basis of Machera's prima facie showing as to jurisdiction. Machera must present "affirmative proof" that "go[es] beyond the pleadings." *Chlebda*, 609 F.2d at 1024. While the Court realizes that "[w]ithout discovery, [Machera]'s task of presenting evidence of defendants' contacts with this forum is very onerous," *Thompson Trading*, 123 F.R.D. at 425, and while the Court would normally grant him great leeway in attempting to discharge his burden, the Court's sympathy is tempered by its knowledge that Machera voluntarily rejected its offer of an additional discovery period on the specific issue of personal

jurisdiction.[9] Having chosen to live by the present state of the record, Machera must be prepared to accept the consequences. The Court therefore accords no weight to Machera's unsupported allegations in his pleadings.

Fortunately for Machera, the Court's review of the record reveals some "affirmative proof." *Chlebda*, 609 F.2d at 1024. In his Opposition to Motion to Dismiss of Defendants In Counterclaim and Request for Hearing [hereinafter Machera Brief], Machera has attached, *inter alia*, the following relevant exhibits:

–A memorandum dated April 21, 1987 on Roberts stationery from Annemarie Griggs to Machera on the subject of "Completing Subscription Documents for Ommen Assoc." and informing him of the possibility of financing his units through Landmark.

–A handwritten note on Roberts stationery dated June 23, 1987 from Jennifer Dawson to a person named "Benita" stating the following:
Enclosed please find 2 pages from the subscription booklet to Ommen Associates. Page A10 requires Atty. Machera's signature (please note that documents have been backdated to 3/31/87). Page E2 requires Mr. Machera's signature in addition to 2 witnesses. If you could *please* Fed Ex. them out after signing by 5 pm Wednesday or Thursday at latest! I appreciate it this [sic] very much! [emphasis in original]

Machera Brief, ex. 4–5 [hereinafter "April 21 Memorandum" and "June 23 Note," respectively].[10] Attached to the former ex-

---

Court concludes that, even after the *General Contracting* decision, it may properly resolve the issue of personal jurisdiction upon the record before it without holding an evidentiary hearing.

**8.** The Court notes in this context that Machera is obligated to plead the circumstances allegedly constituting fraud "with particularity." Fed.R. Civ.P. 9(b).

**9.** In a ruling issued from the bench February 14, 1990, the Court granted Machera thirty days to conduct discovery on the issue of personal jurisdiction, on the condition that he post a

$10,000 bond with the clerk. On February 27, however, Machera's counsel informed the Court that Machera would not post the bond and that the Court should decide the issue of personal jurisdiction based on the present record. Letter from Mark A. Machera to Elizabeth Smith, Docket Clerk (Feb. 27, 1990).

**10.** Machera has also attached a letter, dated July 22, 1987, to Priscilla Baldwin from Landmark Vice President Elliott G. Carey on Landmark stationery in support of this Court's jurisdiction. A courtesy copy was apparently mailed to Machera. The letter concerns the forwarding of Machera's check for $111,400 to Baldwin "for

hibit was the Private Placement Memorandum; attached to the latter was the necessary subscription documents for Machera's purchase of two units in Ommen Associates, with Machera's signature and those of two witnesses. *Id.*, ex. 5.

Moreover, a letter from Baldwin to Machera's counsel on Ommen Associates stationery dated September 27 contains two relevant admissions. Answer, ex. "C" [hereinafter Baldwin Letter]. The first is that Baldwin spoke with Machera on the telephone during the negotiation phase. In the letter, Baldwin states:

> I spoke with Joseph Machera only once via phone per the request of Mark Sanderson who said he was a friend of Joseph Machera.... [The] discussion was concerning the subscription documents and how a unit could be purchased.

*Id.* The second is that Annemarie Griggs ("Griggs"), the author of the April 21 Memorandum, "was a public relations coordinator and administrator for the General Partners of Ommen Associates ... [who] contacted Mr. Joseph Machera to send out the Partnership Offering Memorandum per the request of [Baldwin] and ... Sanderson." *Id.*[11]

In examining the contacts between the defendants-in-counterclaim and the Massachusetts forum, the Court will rely solely on these three documents. When examined in a light most favorable to Machera, *see Murphy*, 460 F.2d at 663; *Palandjian*, 586 F.Supp. at 672, the April 21 Memoran-

dum, the June 23 Note, and the Baldwin Letter indicate that three of the third-party defendants—Roberts, Baldwin, and Ommen Associates—purposefully established contacts with a Massachusetts resident for business purposes. The April 21 Memorandum containing the Private Placement Memorandum is addressed to Joseph Machera; presumably it was mailed to him at his Massachusetts address. Machera Brief, ex. 4. Similarly, the June 23 Note explicitly states that the subscription agreement for Ommen Associates should be sent to Machera by "Federal Ex[press] ... by 5 pm Wednesday or Thursday at [the] latest...." *Id.*, ex. 5.[12] Finally, the Baldwin Letter admits that Ommen Associates and Baldwin sought the investment of a Massachusetts resident. Each of these three documents deals expressly with the matter at the heart of this dispute: Machera's agreement to buy two shares of Ommen Associates.[13]

To summarize, throughout the analysis that follows the Court will consider only the following relevant contacts:

- –the phone call between Baldwin and Machera;
- –the April 21 Memorandum on Roberts stationery sent by Griggs to Machera on behalf of Baldwin and Ommen Associates, containing the Private Placement Memorandum; and
- –the letter sent by overnight mail to Machera by Roberts containing the

---

the purpose of purchasing two units in the Ommen Associates Limited Partnership." Machera Brief, ex. 1. But while this letter would support an argument that Landmark had purposefully established contacts with Massachusetts, Landmark's contacts with the forum are not at issue in this motion. The only issue is the *third-party defendants'* contacts with the Commonwealth. Although the letter was mailed to Baldwin, it does not establish any facts that would support this Court's jurisdiction over her. Indeed, the letter was mailed to her Connecticut business address, presumably from Landmark's Connecticut address. Consequently, the Court accords no weight to it.

**11.** Presumably this "contact" consisted of the April 21 Memorandum. Baldwin's admission indicates that this Memorandum was not solely from Roberts, but was on behalf of Baldwin and Ommen Associates as well.

**12.** The June 23 Note also contains an apparent admission that the subscription documents were indeed backdated to March 31, 1987 to comply with the terms of the Private Placement Memorandum. Machera Brief, ex. 5.

**13.** It is certainly possible that the April 21 Memorandum and the June 23 Note, as well as the subscription agreement, were not sent to Machera in Massachusetts—in other words, that the entire transaction took place in Connecticut. Furthermore, the Baldwin Letter is silent as to who initiated the phone call between Machera and Baldwin. But this Court is mindful of its duty to view the record in a manner most favorable to Machera. Therefore, for purposes of this motion the Court will treat the April 21 Memorandum and June 23 Note as if they were in fact mailed to Machera at his Massachusetts address and will consider the telephone call as having been initiated by Baldwin.

subscription documents for Ommen Associates (as evidenced by the June 23 Note).

### B. Analysis

■ In reviewing personal jurisdiction in a diversity case, this Court's inquiry is essentially twofold: (1) whether jurisdiction is authorized by the forum state's long-arm statute; and (2) whether the exercise of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *See U.S.S. Yachts,* 894 F.2d at 11; *Keds Corp. v. Renee International Trading Corp.,* 888 F.2d 215, 218 (1st Cir. 1989); *Ealing Corp.,* 790 F.2d at 981; *Gray v. O'Brien,* 777 F.2d 864, 866–67 (1st Cir.1985); *Thompson Trading,* 123 F.R.D. at 426. Massachusetts courts have interpreted the Massachusetts long-arm statute as authorizing "an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States," *"Automatic" Sprinkler Corp. of America v. Seneca Foods Corp.,* 361 Mass. 441, 443, 280 N.E.2d 423 (1972); *see also Balloon Bouquets, Inc. v. Balloon Telegram Delivery, Inc.,* 18 Mass.App.Ct. 935, 936, 466 N.E.2d 523, 524 (1984), but "the constitutional due process analysis is only reached 'when some basis for jurisdiction enumerated in the statute has been established.'" *Gray,* 777 F.2d at 866 (quoting *Morrill v. Tong,* 390 Mass. 120, 129, 453 N.E.2d 1221, 1227 [1983]).

### 1. The Massachusetts Long–Arm Statute

■ The first step is to determine whether jurisdiction is authorized by statute. The Commonwealth's long-arm statute provides in relevant part:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

(a) transacting any business in this commonwealth;

.    .    .    .    .

(c) causing tortious injury by an act or omission in this commonwealth; [or]

(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth. . . .

Mass.Gen.L. ch. 223A, sec. 3 (1986). By its terms, especially the "as to a cause of action … arising from" language, this section largely adopts the theory of specific personal jurisdiction described above.

The defendants-in-counterclaim argue that only subsection 3(d) could possibly apply to this case. Machera counters that subsections 3(a), (c) and (d) are all appropriate. The Court examines the applicability of each subsection in turn.

The "transacting any business" clause in subsection 3(a) has been broadly interpreted as applying "to any purposeful acts by an individual, whether personal, private, or commercial." *Ealing,* 790 F.2d at 982 (quoting *Ross v. Ross,* 371 Mass. 439, 441, 358 N.E.2d 437, 439 [1976]); *Bond Leather Co., Inc. v. Q.T. Shoe Manufacturing Co., Inc.,* 764 F.2d 928, 931 (1st Cir.1985); *see also Hahn v. Vermont Law School,* 698 F.2d 48, 50 (1st Cir.1983); *Nova Biomedical Corp. v. Moller,* 629 F.2d 190, 193–94 (1st Cir.1980). In *Ealing,* the First Circuit held that the mere sending of a telex by a British defendant to a Massachusetts plaintiff was sufficient to satisfy the requirements of subsection 3(a). 790 F.2d at 983. In *Bond Leather,* mailing four letters and making one telephone call satisfied subsection 3(a). 764 F.2d at 932. In *Hahn,* the mailing of a law school application sufficed to subject the law school to Massachusetts jurisdiction under subsection 3(a). 698 F.2d at 50. In *Nova Biomedical,* mailing two letters was enough. 629 F.2d at 193–95. *See also North American Video Corp. v. Leon,* 480 F.Supp. 213, 217–218 (D.Mass.1979); *Palandjian,* 586 F.Supp. at 674. Apparently, the literal requirements of subsection 3(a) are easily satisfied. In light of this line of First Circuit cases on point, the Court is confident that the telephone call, the April 21 Memorandum, and

the June 23 Note constitute "transacting any business" by Roberts, Baldwin, and Ommen Associates for purposes of subsection 3(a). Machera has presented no evidence that third-party defendant Haines has activities in Massachusetts that satisfy this provision, however.

Subsection 3(c), dealing with "causing tortious injury in this commonwealth by an act or omission outside this commonwealth," in the Court's view also provides an appropriate basis for jurisdiction over Roberts, Baldwin, and Ommen Associates. The First Circuit has stated that the act or omission in question need not have been physically committed in the Commonwealth. "Where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for [subsection 3(c)] jurisdictional purposes, acted within that state." *Murphy v. Erwin–Wasey, Inc.*, 460 F.2d at 664. Indeed, to hold otherwise "would be closing our eyes to the realities of modern business practices...." *Id.* *See also Leon*, 480 F.Supp. at 218 (telephone calls by each defendant to a Massachusetts plaintiff satisfied subsection 3[c]). In *Ealing*, discussed above, the First Circuit held that subsection 3(c) was an alternative jurisdictional basis. 790 F.2d at 982. If a single telex suffices, surely the three more detailed communications from Roberts, Baldwin, and Ommen Associates do as well. But note that subsection 3(c) does not authorize jurisdiction over Haines.

■ Only subsection 3(d) appears an inappropriate basis for jurisdiction over any of the defendants-in-counterclaim. This provision, unlike the others just discussed, reflects the theory of general personal jurisdiction—note the language of "regularly does or solicits business" and "persistent course of conduct." Mass.Gen.L. ch. 223A, sec. 3(d). The theory underlying subsection 3(d) is that the contacts between the defendant and Massachusetts are so pervasive and continuing that personal jurisdiction is authorized for any tortious injury caused by the defendant in the Commonwealth, even absent a nexus between the contact and the cause of action. In the only First Circuit case the Court's research has uncovered dealing with subsection 3(d), personal jurisdiction was upheld over a defendant who derived "substantial revenue" from the sale of 6,000 pairs of shoes in the Commonwealth, even though the actual title to the goods passed outside the state. *Keds Corp.*, 888 F.2d at 219. In this case, by contrast, Machera has neither demonstrated nor alleged that any of the third-party defendants have such ongoing contacts with or derive substantial revenue from the Massachusetts forum. Hence, subsection 3(d) is not an appropriate jurisdictional basis.

In summary, subsections 3(a) and (c) of the Massachusetts long-arm statute provide jurisdictional bases over the defendants-in-counterclaim Roberts, Baldwin, and Ommen Associates. As to the third-party defendant Haines, however, Machera has failed to establish a prima facie case authorizing personal jurisdiction under the statute.[14] Consequently, Machera's counterclaims against Haines are hereby dismissed.

### 2. Due Process Considerations

The next step in the Court's inquiry is whether the assertion of personal jurisdiction over Roberts, Baldwin, and Ommen Associates would violate the Due Process Clause of the United States Constitution. It is here that the jurisdictional waters become extremely muddy.

As the Supreme Court set out in the seminal case of *International Shoe Co. v. State of Washington* and its progeny, the Due Process Clause requires that before a defendant can be subjected to the jurisdiction of a forum's courts, the defendant must purposefully establish such "minimum contacts" with the forum state that asserting personal jurisdiction does not offend "notions of fair play and substantial

---

**14.** The Court expresses no opinion as to whether the other telephone calls and letters alleged in the pleadings, had they been properly supported, would have provided a jurisdictional basis over Haines under Mass.Gen.L. ch. 223A, sec. 3.

justice." 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The Court must decide, based on the extent of the third parties' conduct in or contacts with Massachusetts, whether it is reasonable and not unfair to have them defend against a suit in the Commonwealth. *Kulko v. Superior Court of California,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978).

■ In performing the minimum contacts analysis, one of the factors a court should consider is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Due process requires that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Shaffer v. Heitner,* 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J., concurring in judgment). *Cf. Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) ("it is essential . . . [that] the defendant purposefully avails itself of the privilege of conducting activities within the forum State. . . ."). Foreseeability alone, however, is not enough for a forum state to assert personal jurisdiction. *Hugel v. McNell,* 886 F.2d at 4 (citing *World–Wide Volkswagen Corp.,* 444 U.S. at 295–96, 100 S.Ct. at 566).

■ The level of contacts necessary to constitute "fair warning" depends both on the cause of action asserted and whether the jurisdiction sought is general or specific. As the Supreme Court stated in the oft-cited case of *Burger King Corp. v. Rudzewicz:*

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities. . . .

471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 [1984]; *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 [1984]). *See also Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 112, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987). "Jurisdiction in these circumstances may not be avoided simply because the defendant did not *physically* enter the forum State." *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184 (emphasis in original).

"When a cause of action arises from the defendants' contacts within the forum, less is required to support jurisdiction than when the cause of action is unrelated to those contacts." *Ealing,* 790 F.2d at 983 (quoting *Vencedor Manufacturing Company, Inc. v. Gougler Industries,* 557 F.2d 886, 889 [1st Cir.1977]; *International Shoe,* 326 U.S. at 317, 66 S.Ct. at 158). *See also Thompson Trading,* 123 F.R.D. at 426. This is common where the cause of action is for alleged tortious conduct. Massachusetts courts have held that "a single act within the forum may . . . be sufficient to warrant the assertion of jurisdiction over a defendant." *Morrill,* 390 Mass. 120, 132, 453 N.E.2d 1221, 1229 (1983).

■ Here, Machera alleges that the third-party defendants made false and fraudulent misrepresentations to him in Massachusetts to induce him to invest in Ommen Associates. Furthermore, his cause of action arises directly out of the alleged contacts—the phone call from Baldwin, the April 21 Memorandum from Roberts on behalf of Baldwin and Ommen Associates, and the letter in June 1987 from Roberts containing the necessary subscription documents. He claims that these statements were fraudulent. Consequently, the Court focuses on "the relationship among the defendant, the forum, and the litigation. . . ." *Shaffer v. Heitner,* 433 U.S. at 204, 97 S.Ct. at 2580.

This Court holds that Baldwin, Roberts, and Ommen Associates "purposefully directed" their activities at a Massachusetts

resident in search of financial gain. *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2181. By calling Machera by telephone and sending him the relevant investment materials at his Massachusetts address, they "manifestly ha[ve] availed [themselves] of the privilege of conducting business" in the Commonwealth. *Id.* at 476, 105 S.Ct. at 2184. The phone call and letters were made and sent with the specific purpose of gaining Machera's investment in Ommen Associates. While not overwhelming, in the circumstances of this case they provide the necessary level of minimum contacts to satisfy due process.

Finally, having determined that the third-party defendants purposefully established minimum contacts within Massachusetts, the Court must now consider these contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *International Shoe,* 326 U.S. at 320, 66 S.Ct. at 160). In so doing, the Court keeps in mind the Supreme Court's admonition that "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184.

Neither Roberts, Baldwin, nor Ommen Associates has presented such a "compelling case." There is no "potential clash" between Massachusetts law and Connecticut public policy, *id.*—indeed, Machera's claims sound in Connecticut law as well. Moreover, none of the remaining defendants-in-counterclaim has demonstrated that it or she will be severely disadvantaged by having to come to Massachusetts to defend against Machera's counterclaims.

Consequently, the Court holds that Machera has established a sufficient prima facie case that Roberts, Baldwin, and Ommen Associates are subject to this Court's personal jurisdiction. Machera may proceed with his counterclaims against them. This holding is fully consistent with First Circuit precedent. *See Keds Corp.,* 888 F.2d at 219; *Hugel v. McNell,* 886 F.2d at 3–5; *Ealing,* 790 F.2d at 984 (single telex containing false statement sufficient to support jurisdiction); *Hahn,* 698 F.2d at 51–52 (mailing of law school application sufficed); *Nova Biomedical,* 629 F.2d at 192–97 (sending of threatening infringement letters); *Salvador v. Meese,* 641 F.Supp. at 1414–15 (investors alleged that attorney visited Massachusetts and made intentional misrepresentations that induced them to invest in Florida swampland; fact that this was attorney's sole contact with forum did not defeat jurisdiction); *Leon,* 480 F.Supp. at 217–19 (jurisdiction proper in fraud suit where nonresident defendant made phone calls to and attended meetings in Massachusetts).[15]

## IV.  CONCLUSION

For the foregoing reasons, the motion of third-party defendant Haines to dismiss the counterclaims asserted against him by defendant Machera is ALLOWED. The motions of third-party defendants Baldwin, Roberts, and Ommen Associates to dismiss the counterclaims asserted against them are DENIED.

SO ORDERED.

---

**15.** The cases in which the First Circuit has gone the other way, i.e., holding that personal jurisdiction was lacking, can be distinguished. These cases can be placed in two categories. In the first category are cases in which the court was faced with (or chose to focus on) the breach of a contractual relationship, not an allegation of tortious conduct. *See U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.,* 894 F.2d 9 (1st Cir.1990); *Bond Leather Co., Inc. v. Q.T. Shoe Manufacturing Co., Inc.,* 764 F.2d 928 (1st Cir.1985). In the second category are cases in which the cause of action, unlike Machera's, did not arise out of the alleged contacts. *See American Express International, Inc. v. Mendez–Capellan,* 889 F.2d 1175 (1st Cir.1989).